PATRICIA B. FEHRINGER and
VINCENT D. FEHRINGER, Appellants

v.

BLUEBEARD'S CASTLE, INC.

No. 17,552

United States Court of Appeals

Third Circuit

Argued January 27, 1970

Decided July 8, 1970

*See, also, 6 V.I. 471*

THOMAS D. IRELAND, ESQ. (MAAS, IRELAND & BRUNO), Charlotte Amalie, St. Thomas, Virgin Islands, *for appellants*

WILLIAM W. BAILEY, ESQ. (BAILEY, WOOD & ROSENBERG), Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before HASTIE, *Chief Judge*, and STALEY and GANEY, *Circuit Judges*

## OPINION OF THE COURT

HASTIE, *Chief Judge*

This is a second appeal in an action for negligent personal injury, 6 V.I. 471. The accident occurred on the premises of the defendant's hotel in St. Thomas, Virgin Islands. On the evening of their arrival as guests at the hotel, the plaintiffs, husband and wife, were descending a stone stairway on the hotel grounds when the wife fell and sustained the injuries for which she and her husband now seek damages.

On first trial, the district court, sitting without a jury, heard the case on its merits and entered judgment for the defendant. On appeal, this court vacated the judgment and remanded the case for findings of fact in accordance with Rule 52(a) of the Federal Rules of Civil Procedure. Fehringer v. Bluebeard's Castle, Inc., 3d Cir. 1968, 6 V.I. 471, 395 F.2d 851. Thereafter, the district court filed findings of fact and conclusions of law and again dismissed the complaint. This appeal followed.

The plaintiffs' basic allegations were that the stairs were inadequately lighted, faultily designed, and unprotected by a sufficient handrail or a warning sign. The district court made findings of fact adverse to all of these allegations, and found additionally that the injured plain-

tiff was contributorily negligent in failing "to see or look where she was going" and in failing to use the handrail. We focus attention upon the trial court's findings of adequate lighting and contributory negligence.[1]

The record shows that the plaintiffs had arrived at the hotel the evening of the accident. They were using the steps in question for the first time. Photographs and a diagram of the stone and concrete stairway are in evidence. They show four exterior steps leading down from what appears to be a covered terrace or porch. The tread of each of the first three steps extends about a foot from the riser behind it to its forward edge. However, the tread of the bottom step is twice as wide, extending about two feet. Immediately below this wide bottom step is a sizeable landing.

It was Mrs. Fehringer's testimony that as she descended the stairs the illumination made what proved to be a wide bottom step appear to be part of the landing. Accordingly, she took one stride down onto the step and then, believing she was in a level area, a second stride forward, with the result that she fell heavily to the landing some eight inches below the step. More particularly she testified that:

"as we walked through that area [the terrace at the top of the steps] there were no lights. Now, I don't recall what lights may

---

[1] These critical findings of fact were as follows:

"8. That the stairs and adjacent areas were not inadequately lighted as the plaintiffs, who were walking side by side, could and did see where they were going as they approached the stairs, descended the stairs, after the plaintiff Patricia B. Fehringer's fall at the foot thereof, and as they retraced their route thereafter;
. . ."

15. That the plaintiff Patricia B. Fehringer was guilty of contributory negligence under the circumstances in failing to see or look where she was going, in failing to act as a prudent and careful person would act under similar circumstances in not stopping or holding on to the balustrade ([h]andrail) provided when she was unsure or incorrect in her judgment as to what lay ahead of her as she descended the steps;
. . ."

In view of our disposition of this appeal, we deem it unnecessary to consider the other findings of the district court.

538

have been ahead of us, but we did walk through that area and there were no lights behind us. The lights were not lighted on that terrace. What light was present that night created a shadowy appearance at the bottom of those steps and on that area."

She also testified that:

"I just simply could not see that that last step was a step. I thought I had negotiated all the steps and was on the landing at the bottom of the steps.

. . .

The light was bad and the top of the riser of the last step seemed to me to be a seam or crack in this landing. . . ."

Except for a rather speculative inference that might be drawn from the fact that Mr. Fehringer, who accompanied his wife, did not fall, the record contains no direct or circumstantial evidence that is inconsistent with Mrs. Fehringer's testimony. With reference to lighting, there was evidence that there were a hanging light and a post light on the terrace some 11 feet behind the plaintiffs at the time of the accident. In addition there were two post lights ahead of the plaintiffs, in positions not clearly indicated, 15 and 31 feet from the steps. The evidence, other than Mrs. Fehringer's testimony, does not show whether any of these lights were on at the time of the accident, nor even how much illumination they supplied in the critical area when on.

Thus the record does not support the trial court's finding that "the stairs and adjacent areas were not inadequately lighted as the plaintiffs, who were walking side by side,[2] could and did see where they were going . . . ."

The court also found Mrs. Fehringer guilty of contributory negligence "in failing to see or look where she was going, . . . in not stopping or holding on to the balus-

---

[2] We have found no evidentiary basis for this statement that the plaintiffs were walking "side by side," though their testimony shows they were walking on opposite sides of the stairs.

trade. . . ." However, the testimony of Mrs. Fehringer that she has good eyesight and that she did look where she was going stands uncontradicted. If her observation of the bottom step and the landing conveyed an inaccurate impression, this error is attributable, on the present record, to inadequate illumination and the resultant shadowy condition of the area. Moreover, if, as she testified, it appeared that she was crossing a landing, she would have had no reason either to stop or to grasp the railing. Finally, although there was a railing on her husband's side of the stairway, there was none on the side where she was walking. It cannot reasonably be held in these circumstances that the omissions cited by the court were blameworthy and constituted contributory negligence.

On this appeal, the plaintiffs have asked in the alternative that we have judgment entered for them or that we order a new trial. Although we have authority to reverse a district court's findings and to order judgment to be entered for a plaintiff "[w]here the evidence of record points in only one direction,"[3] we think it is "just under the circumstances" to require further proceedings. 28 U.S.C. § 2106 (1964). The present record is sketchy in several particulars, and if, as appropriate pretrial procedure might disclose, the defendant can and wishes to show significantly more in its defense, we think it fair that it be permitted to do so at a new trial.

The judgment will be vacated and the cause remanded for a new trial or other procedure consistent with this opinion.

GANEY, *Circuit Judge, dissenting*

[3] Kosty v. Lewis, D.C. Cir. 1963, 319 F.2d 744, 749, cert. denied, 375 U.S. 964.

I dissent. This case has been tried twice before. At the first trial the verdict was for the defendant, but this court, on review, sent it back to the trial court to make additional findings of fact. It was tried the second time and the court made elaborate findings of fact and again found for the defendant. It is now up on review before this court in which the majority has decided that it should be sent back to the trial court for the third time.

The record discloses the following facts: Mrs. Patricia B. Fehringer, the plaintiff, and her husband, Vincent D. Fehringer, left Murfreesboro, Tennessee, for a golfing holiday at the El Dorado Beach Hotel in San Juan, Puerto Rico. En route, they stopped at Bluebeard's Castle Hotel, situate high on a hillside in Charlotte Amalie on the island of St. Thomas in the Virgin Islands, for a weekend in order to witness Carnival which was then in progress. They arrived at the hotel on the afternoon of Friday, April 30th, were assigned to a cottage adjacent to the hotel where similar cottages were located. After dinner, returning to their cottage, they left the dining room and proceeded through an area designated as a cocktail lounge and bar which can be described as follows: Exhibit 1 shows the cocktail lounge or terrace and the particular area in question which consists of a stone wall some 3 feet in height surrounding it on the right as one walks through, which was the direction Mr. and Mrs. Fehringer were proceeding. Along the concrete wall of the cocktail lounge area were two lights placed on the top of posts which Mrs. Fehringer testified were not lit and that the whole area was in darkness. Leaving the cocktail lounge, there was a step which had a riser of 3 1/2 inches and a tread of 28 inches on its right and 13 inches on the left, the width of the stairway being 49 3/4 inches. Mrs. Fehringer negotiated this first step and the remaining three steps when she stepped onto the fourth, which had a tread

541

of 24 inches straight across the width of the stairway, some few inches longer than the tread at the top of the steps. She testified that she thought the edge of the last step was a break in the concrete and attempted to step off and in so doing fell off the step, twisted her ankle and injured her right shoulder. The exhibits show no break in the concrete on the fourth step and the only break running across the area is some 5 feet from the bottom of the steps where she fell. The steps or stairway, as indicated, were 49 3/4 inches wide and on the right, the entire length of the stairway, was a railing painted a bright white which ran to the end of the steps and on the left was a stone wall paralleling the railing, likewise, to the bottom of the steps. At the bottom of the steps is an area to the right of which is a pathway proceeding to the hotel's pool and to the left is a stairway going up to another section of the hotel and at the foot of this stairway, on the left, is a light at the top of a post, which is 11 feet 2 inches from the bottom of the steps at which Mrs. Fehringer fell. There was no question but that this light was lit although she testified that it was a "bad light" and the area seemed shadowy. It was testified that the lights on the cocktail lounge and the light at the foot of the stairway to the left were lit by photoelectric cells, which lights became lit when a certain degree of darkness prevailed. There was no one in the area at the time she fell and her husband helped her to her feet and they proceeded through this open area and down the pathway to where their particular cottage was located. She did not call the hotel management and report that the lights in the cocktail lounge were out, nor is there any evidence in the record that other cottagers in the same area as the one they occupied complained of an outage of the lights in this area.

The next morning Mr. and Mrs. Fehringer went to the hotel dining room, ate their breakfast and then went to the desk and reported her fall. The clerk gave her the name of a doctor whom she called upon returning to her cottage, but could not locate,[1] and she made no attempt to secure a doctor during the rest of the day. However, she sat along the pool in the afternoon in a bathing suit, hoping that the sun would be beneficial to her shoulder. She did not call a doctor on the following day, Sunday, but they packed their luggage, went to the airport and flew to San Juan. From there they proceeded to the Dorado Beach Hotel, where during the day she went to the dispensary and a nurse gave her some pills for the pain in her shoulder, of which she complained, and also a sling which the nurse thought would relieve the pain by supporting her arm. However, she testified she never used the sling. She stayed in San Juan about a week, never securing a doctor, flew back home and consulted a doctor there who treated her twice and finally recommended her to another doctor who testified that there were adhesions of the muscles in her right shoulder, sent her to the hospital where they were disconnected and she returned home in four days.

The manager of the hotel testified for the defense, as indicated, that the lights were turned on by photoelectric cells and that the light in the area where she fell was 11 feet 2 inches away from that spot and this light illuminated the whole area.

It is obvious that the trial judge at the two previous trials did not believe the plaintiff's story and, in my judgment, with good reason. It is difficult to believe that the cocktail lounge in this, one of the finest hotels on the Island, the night before the final day of Carnival, had

---

[1] So in original. Probably should read "locate him".

lights which were not lit; that she negotiated another tread at the top of the steps in darkness and the last tread being of about equal length, she mistook, even in a "bad light," as the edge of a crack in the concrete. Furthermore, the testimony of the manager that the light some 11 feet 2 inches from where she fell illuminated the entire area and that no other cottagers in the same location as Mrs. Fehringer gave any report of the outage of lights in the area, gave substance to the trial judge's findings in rendering judgment for the defendant. I cannot say that the finding of the trial judge who visited the scene of the area during the trial in holding that the defendant was not negligent was clearly erroneous, since there was substantial evidence on this record on which to base his judgment.

Additionally, I hold that the defendant[2] was contributorily negligent. Assuming her testimony to be true, that the cocktail lounge lights behind her were out when she descended the steps and that the area was dark, she made no attempt in this situation to put her left hand against the wall to steady herself on the way down or hold on to her husband's arm or to use the bright white railing which was provided by the hotel for just that purpose. However, she chose to walk unaided in the darkness, down the steps and into the area which she described has a "bad light" and being mistaken as to the last step, thinking the edge thereof was a break in the concrete, fell into the open area, the riser of which was 8 1/2 inches to the concrete open area. In so doing, I deem her actions to be contributorily negligent, deny recovery and would affirm judgment of the lower court.

---

[2] So in original. Probably should read "plaintiff".